**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT WILSON,<br><br>                                     Plaintiff,<br>v.<br><br>RATER8, LLC, a Delaware Limited Liability Company; SAN DIEGO ORTHOPAEDIC ASSOCIATES MEDICAL GROUP, a California Corporation; MANEESH BAWA, M.D., an individual; LARRY D. DODGE, M.D., INC., a California Corporation; LARRY D. DODGE, M.D., an individual,<br><br>                                    Defendants. | Case No.: 20-cv-1515-DMS-LL<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Pending before the Court is Defendants' motion to dismiss. Plaintiff filed an opposition and Defendants filed a reply. The matter is fully briefed and submitted.

# I.

# BACKGROUND

### A. Procedural History

Plaintiff filed this class action on August 6, 2020, alleging Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, and Unfair

1

Competition Law ("UCL"), California Business & Professions Code § 17200. (ECF No. 1, Compl. ¶¶ 1–2, 33–53.) On November 4, 2020, Plaintiff filed a First Amended Complaint ("FAC"). (ECF No. 12, FAC.) In the FAC, Plaintiff asserts the same UCL and TCPA claims along with an additional state law claim for violations of the Confidentiality of Medical Information Act, Civil Code § 56, *et seq*. ("CMIA"). (*Id.* ¶¶ 1–2, 64–105.) Plaintiff also named Maneesh Bawa, M.D. and Larry D. Dodge, M.D. as additional defendants. (*Id.* ¶¶ 2, 8, 10.)

On October 27, 2020, Defendants filed a motion to stay proceedings pending the Supreme Court's decision in *Facebook v. Duguid*, 141 S. Ct. 1163 (2021). (ECF No. 11.) On February 2, 2021, the Court granted the requested stay. (ECF No. 21.) On April 14, 2021, Defendants filed a notice of decision informing the Court that the Supreme Court issued its decision in *Duguid*. (ECF No. 22.) Defendants filed the instant motion to dismiss on July 16, 2021, (ECF No. 25), and thereafter Plaintiff filed an opposition, (ECF No. 27), and Defendants filed their reply.[1] (ECF No. 29.)

**B.   Factual Allegations**

Plaintiff alleges he visited Dr. Larry Dodge on June 23, 2020, for an independent medical examination. (FAC ¶¶ 30, 32.) Plaintiff underwent the examination pursuant to a demand by the insurance carrier of a non-party to this action with whom Plaintiff was involved in separate litigation arising out of an automobile accident. (*Id.* ¶ 32.) At approximately 3:25 p.m. that day, Plaintiff received a text message from the number 989-75, which stated: "Hello, you recently visited Larry Dodge. Please provide your rating: https://x.rater8.com/umg3sy. To unsubscribe: https://x.rater8.com/ujhrq7." (*Id.* ¶¶ 30, 39.) Plaintiff received the text message minutes after undergoing his medical examination. (*Id.* ¶ 32.) Plaintiff alleges rater8 is a company that contracts with Defendants to provide "Patient Satisfaction Surveys whereby upon checkout, patients immediately receive a text

---

[1] Plaintiff also filed a statement of new decision, (ECF No. 30), as did Defendants, who filed two notices of supplemental authority in support of their motion. (ECF Nos. 31–32.)

or email requesting feedback about their visit." (*Id.* ¶¶ 35–36 (quotation marks omitted).) Plaintiff further alleges that rater8's computer system "utilizes its clients' computer practice management systems to send [rater8] an HL7 file containing the patient's appointment information so that [rater8] can process it in order for [rater8] to send text messages."[2] (*Id.* ¶ 49.) Plaintiff alleges Defendants sent electronic files including Plaintiff's name, cell phone number, physician name, appointment information, discharge date, and discharge time to rater8 through their computer practice management systems. (*Id.* ¶¶ 51–52.) Plaintiff alleges the text "was sent by an [Automatic Telephone Dialing System ("ATDS")] within the definition of the TCPA." (*Id.* ¶¶ 43, 67.)

## II.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. *See* Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). A court, however, need not accept all conclusory allegations as true. Rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citations omitted). A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[2] The FAC defines HL7 as "a set of international computer programming standards for the transfer of clinical and administrative data between computer software applications used by numerous healthcare providers for the exchange, integration, sharing, and retrieval of electronic protected health information that supports clinical practice and management, delivery, and evaluation of services." (FAC ¶ 50.)

3

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

## III.
## DISCUSSION

### A.   TCPA Claims

Defendants argue Plaintiff failed to allege sufficient facts to support his claims that Defendants used an ATDS in violation of the TCPA. Specifically, Defendants argue the definition of an ATDS, as recently clarified in *Duguid*, is fatal to Plaintiff's TCPA claims because the factual allegations in the FAC render implausible the notion that the text message at issue in this case was sent using such a device. The Court agrees.

Under the TCPA, it is "unlawful for any person . . . to make any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). To state a claim under Section 227(b)(1)(A)(iii), a plaintiff must plausibly allege "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042–43 (9th Cir. 2012). A text message is a "call" within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). In *Duguid*, the Supreme Court held that "to qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." 141 S. Ct. at 1167. Therefore, to sustain a claim under Section 227(b), "the equipment in question must use a random or sequential number generator." *Id.* at 1170.

Plaintiff's ATDS allegations parrot the TCPA's text. *Compare* FAC ¶ 43 ("The systems utilized by Defendants have the capacity to store telephone numbers using a

4

random or sequential generator; and to dial such numbers from a list without human intervention") *with* 47 U.S.C. § 227(a)(1) ("The term 'automatic telephone dialing system' means equipment which has the capacity— to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers") (numbering omitted). Such conclusory allegations alone are insufficient to state a claim under Section 227(b)(1)(A). *See Watts v. Emergency Twenty Four, Inc.*, No. 20-cv-1820, 2021 WL 2529613, at *3 (N.D. Ill. June 21, 2021) ("Allegations that merely recite the words of the TCPA or that simply state that the defendant used an ATDS are conclusory.") (internal quotation and bracketing omitted).

Furthermore, Plaintiff fails to allege additional facts sufficient to support an inference that the text message at issue was sent using an ATDS. In assessing the plausibility of an ATDS claim, courts consider the following non-dispositive factors: (1) "the nature of the message" with a generic, impersonal, or promotional message suggesting ATDS; (2) "the number or frequency of messages," with "repetitive messages sent over a short period of time" suggesting ATDS; (3) "[t]he ability to respond to or interact with the text messages (i.e., sending 'Stop')," with interactivity of this character suggesting use of an ATDS; (4) "the relationship between the parties," with a pre-existing relationship weighing against ATDS; (5) whether identical messages were sent to multiple numbers simultaneously; and (6) whether the message was sent from a SMS short code or long code, with a SMS short code suggesting an ATDS. *Schley v. One Planet Ops Inc.*, 445 F.Supp.3d 454, 459-60 (N.D. Cal. 2020) (collecting cases). Plaintiff points out that the text message here was sent using a short code. (FAC ¶¶ 38–41; ECF No. 17 at 12.) The text also gave Plaintiff the ability to unsubscribe from receiving future messages by clicking a link. (FAC ¶¶ 5, 30.) These two factors support Plaintiff's ATDS claims. The FAC contains no allegations as to whether identical messages were sent to other cell phones simultaneously.

The remainder of the relevant factors, however, counsel against finding Plaintiff's ATDS claims to be plausible. Plaintiff alleges he received the single text message at issue

in this case "minutes" after seeing Dr. Dodge for a medical examination. (FAC ¶ 32.) The text message prompted Plaintiff to rate his experience with Dr. Dodge. (*Id.* ¶¶ 5, 30.) The nature of this solitary text and the relationship between the parties indicate the text was not sent using an ATDS. Rather than bolstering the allegation that Defendant used an ATDS, these facts belie the notion that Defendant sent the text message using random or sequential number generation. Instead, the allegations indicate that Plaintiff was targeted with the text message. Plaintiff invites the Court to find it plausible that minutes after undergoing his examination with Dr. Dodge, a device happened to randomly generate his cellular phone number and send a text about that examination.[3] The Court declines to credit this speculative possibility over the much more plausible scenario that the text message was targeted at Plaintiff's cellular telephone number.

Numerous courts have dismissed claims arising under similar facts after *Duguid*.[4] *See Jovanic v. SRP Investments LLC*, No. CV-21-00393-PHX-JJT, 2021 WL 4198163, at *4 (D. Ariz. Sept. 15, 2021) (dismissing TCPA case with prejudice where the plaintiff alleged he received a single targeted text message, which "cut against the inference that

---

[3] Plaintiff's position on this point is inconsistent. While the FAC contains an allegation that Plaintiff did not provide his personal cellular telephone number to any of the defendants in this case, he also argues that "[t]he *only way* Defendants could have obtained Plaintiff's personal cellular telephone number and learned about his visit with DR. DODGE must have come from his confidential medical information in the possession of SDOAMG, DODGE M.D., INC., DR. BAWA and DR. DODGE." (*Compare* FAC ¶¶ 31, 33 *with* ECF No. 27 at 11:22–25.)

[4] Plaintiff's opposition to Defendant's motion relies on this Court's decision in *Gross v. GG Homes, Inc.*, No. 21-cv-00271-DMS-BGS, 2021 WL 2863623 (S.D. Cal. July 8, 2021). (*See* ECF No. 27 at 7–8, 15–16.) In *Gross*, the Court denied a motion to dismiss a *pro se* Plaintiff's ADTS claim, citing the less stringent pleading standard afforded to plaintiffs proceeding without legal representation. *Gross*, 2021 WL 2863623, at *2, 7–8. However, on a motion for reconsideration, the Court subsequently dismissed the ATDS claims in that case because the text messages at issue were targeted directly to the plaintiff, using her first name, rendering it implausible that the plaintiff's cell phone number could have been produced using a random or sequential number generator. *Gross v. GG Homes*, No. 3:20-cv-00271-DMS-BGS, 2021 U.S. Dist. LEXIS 198339 (S.D. Cal. Oct. 14, 2021).

6

Defendants used an ATDS."); *Watts*, 2021 WL 2529613, at *3 (dismissing case where "the nature of [the calls at issue] suggests that they were targeted at specific individuals"); *Barry v. Ally Fin., Inc.*, No. 20-12378, 2021 WL 2936636, at *1 (E.D. Mich. July 13, 2021) (dismissing case where the plaintiff's TCPA claim was based "on phone calls she received that were unsolicited but nonetheless directed to her"); *Hufnus v. DoNotPay, Inc.*, No. 20-cv-08701-VC, 2021 WL 2585488, at *1-2 (N.D. Cal. June 24, 2021) (dismissing case with prejudice where the complaint did not support an inference that a random or sequential number generator was used); *Stewart v. Network Cap. Funding Corp.*, No. CV 21-368-MWF (MAAx), 2021 WL 3088011, at *2 (C.D. Cal. July 16, 2021) (dismissing case where "the FAC merely recite[d] legal conclusions, pleading no facts plausibly showing that [defendant's] dialing equipment employed or used a random or sequential number generator in placing the complained-of calls"). Accordingly, the Court finds that Plaintiff failed to plausibly allege the use of an ATDS. Defendants' motion to dismiss Plaintiff's TCPA claims is therefore granted.

### B.   UCL Claim

Defendants argue Plaintiff's UCL claim should be dismissed for lack of statutory standing because Plaintiff failed to adequately allege a nontrivial economic injury caused by the alleged TCPA violation. The Court agrees.

To have standing to bring a claim under the UCL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury; and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F.Supp.2d 942, 965 (S.D. Cal. 2012) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 322 (Cal. 2011)); *see* Cal. Bus. & Prof. Code § 17204 (under the UCL only a "person who has suffered injury in fact and has lost money or property as a result of the unfair competition" has standing to bring an action for relief). The "requirement that injury be economic renders standing under [the UCL] substantially narrower than federal standing . . . which may be predicated on a

7

broader range of injuries." *Kwikset Corp.*, 51 Cal.4th at 324. To satisfy the injury-in-fact requirement, a plaintiff need show "a personal, individualized loss of money or property in any *nontrivial* amount." *Id.* at 325 (emphasis added).

Plaintiff alleges he "suffered an injury in fact resulting in a loss of money and/or property because he was charged for the TCPA text message he received from Defendants."[5] (FAC ¶ 82.) The allegation that Plaintiff was "charged" is conclusory, particularly when cellular providers customarily provide unlimited text messaging for a flat fee. *See Reichman v. Poshmark, Inc.*, 267 F.Supp.3d 1278, 1288 (S.D. Cal. 2017) (holding allegation that a text message wasted plaintiff's "economically valuable text message allotments" was insufficient to demonstrate an economic injury, and therefore insufficient to confer standing under the UCL, because such a loss is economically trivial). Accordingly, Plaintiff's UCL claim fails for lack of standing. The Court therefore dismisses Count III of the FAC.

### C. CMIA Claim

The CMIA provides that "[a] provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization . . . ." Cal. Civ. Code § 56.10(a). The CMIA also creates a private right of action for violations of the Act. *Id.* § 56.36(b). Plaintiff alleges individual Defendants Bawa and Dodge, along with corporate Defendant Larry D. Dodge M.D., Inc. (the "CMIA Defendants"), violated the CMIA by providing confidential medical information to rater8. (FAC ¶¶ 87–105.)

The CMIA Defendants, by contrast, argue Plaintiff failed to state a claim because the information they are alleged to have disclosed to rater8 does not constitute "medical

---

[5] Plaintiff also alleges he was injured by Defendants' alleged failure to protect the confidentiality of his medical information. (FAC ¶ 82.) However, this alleged injury is non-economic. As such, it is insufficient to confer standing to pursue relief under Cal. Bus. & Prof. Code § 17204.

8

information" within the meaning of the CMIA. As such, the CMIA Defendants argue Plaintiff failed to plausibly allege his claim under the CMIA. The CMIA defines the term "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or *treatment*." *Id.* § 56.05(j) (emphasis added). Defendants argue that the medical *examination* Plaintiff underwent in this case does not constitute medical treatment and that the information allegedly disclosed is too insubstantial to support a claim under the CMIA. Here, too, the Court agrees with Defendants.

"It is clear from the plain meaning of the statute that medical information cannot mean just any patient-related information held by a health care provider, but must . . . include 'a patient's medical history, mental or physical condition, or treatment.'" *Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430, 435 (2014). This information must be "substantive." *Id.* at 434. Nowhere in the FAC does Plaintiff allege the CMIA Defendants disclosed such information.

Rather, Plaintiff alleges the CMIA Defendants disclosed Plaintiff's name, cellular telephone number, "treating physician names, medical treatment appointment information, and medical treatment discharge dates and times" to rater8. (FAC ¶ 52.) While some of this information is "individually identifiable,"[6] none of it constitutes "medical information" within the meaning of the statute. Describing an examination as treatment does not make it so. Plaintiff alleges that he visited Dr. Dodge for an independent medical examination that occurred "pursuant to a demand by the insurance carrier of a non-party to this action with whom Plaintiff was involved in a separate litigation arising out of an automobile

---

[6] "'Individually identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." Cal. Civ. Code § 56.5(j).

collision."  (FAC ¶ 32.)  Beyond the conclusory use of the words "treating" and "treatment," he does not allege facts that would allow the Court to infer that he received medical treatment during that examination.[7]  Thus, information about the appointment cannot be said to constitute information regarding treatment.  Indeed, "[e]ven accepting that [a] person was treated, this fact that he or she was a patient is not in itself medical information as defined in section 56.05 . . . ."  *Eisenhower Med. Ctr.*, 226 Cal. App. 4th at 435–36 ("[T]he mere fact that a person may have been a patient at the hospital at some time is not sufficient" to allege medical information under the CMIA).  Here, the FAC does not contain specific allegations about what information the CMIA Defendants disclosed to rater8 beyond Plaintiff's contact information and appointment date.  This is insufficient to allege disclosure of medical information under the CMIA.  Accordingly, Plaintiff's CMIA claim is dismissed.

/ / /

/ / /

/ / /

/ / /

---

[7] Nor does Plaintiff cite any authority supporting his position that the information allegedly disclosed to rater8 constitutes "medical information" under the CMIA.  Rather, in his statement of new decision, Plaintiff directs the Court to *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JMC, 2021 WL 3568394 (D.S.C. Aug. 12, 2021).  (ECF No. 30.)  *Blackbaud* is distinguishable from the present case.  In *Blackbaud*, the court found that one plaintiff plausibly alleged the disclosure of medical information under the CMIA where she alleged two defendants informed her that her name, address, phone number, email address, date of birth, age, room number, patient identification number, name of hospital where treated, applicable hospital department or unit, inpatient/outpatient status, dates of service, patient room number, and physician name were exposed or may have been exposed in a ransomware attack.  *Blackbaud* at *7.  In that case, plaintiff further alleged that additional information such as her diagnosis or treatment plan may have been compromised.  *Id.*  Here, Plaintiff's allegations are much narrower and less detailed and substantive than those in *Blackbaud*.  Further, there is no allegation that the CMIA Defendants disclosed diagnostic or treatment information.

## IV.

## CONCLUSION

For these reasons, the Court dismisses Plaintiff's FAC in its entirety. Plaintiff is granted leave to file an amended complaint that cures the pleading deficiencies set out above no later than 14 days from entry of this Order.

**IT IS SO ORDERED**

Dated: October 18, 2021

Hon. Dana M. Sabraw
United States Chief District Judge